CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY v.

J. B. GARRISON.

(Filed February 13, 1907.)

VERDICT—Directed, When. Where the evidence clearly shows that the plaintiff is entitled to recover, and the only dispute is as to immaterial issues, it is not error for the court to direct a verdict and where the evidence is undisputed on all the issues' necessary for the plaintiff's recovery, the court should instruct the jury to find for the plaintiff, although there may be a dispute in the evidence as to other immaterial issues.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before James K. Beauchamp, Trial Judge.*

*Charles B. Stuart,* and *Thomas R. Beman,* for plaintiff in error.

*Chambers & Taylor,* for defendant in error.

### STATEMENT OF FACTS.

This was an action begun by the plaintiff in error in the probate court of Oklahoma county, March 31, 1903 against the defendant in error to recover the sum of $45.24, with interest thereon from March 6, 1902, as freight charges upon a car of lump coal, bought by the defendant in error of the William Busby Coal Company and shipped from McAlester,

I. T., on February 27, 1902, over the M. K. & T. Railroad to South McAlester, I. T., and thence over the line of the plaintiff in error to Oklahoma City, O. T. It was loaded at the Samples Coal & Mining Company, at McAlester, for which company the Busby company acted as sales agent. The car in question is M. K. & T. car, 21517. The plaintiff recovered judgment for its claim in the probate court. The defendant appealed to the district court where the case was docketed, and retried. When the case was reached for trial in the district court, by agreement of the parties, it was consolidated with the case of Wm. Busby, doing business as the Wm. Busby Coal Company, against J. B. Garrison, the same defendant as in this case, and both cases were tried together upon the same evidence and before the same jury. The jury returned separately a verdict in each case, finding for the defendant in this case upon which judgment was rendered against plaintiff for costs. Motion for new trial was made in due time, overruled, and exceptions saved, judgment rendered on verdict, to which exceptions were saved, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: The only error relied upon by plaintiff in error for a reversal of this case is that the court refused to give instruction No. 1, offered by the plaintiff in error. Instruction number one is as follows:

"You are instructed that under the law and the evidence in this case, the plaintiff, Choctaw, Oklahoma and Gulf Railroad Company is entitled to recover, and your verdict will therefore be in favor of the said plaintiff in such amount as

you find to be the freight charges from McAlester, Indian Territory, to Oklahoma City, O. T., on the car of coal in controversy."

Now, there seems to be no controversy as to the amount or correctness of the freight charges sued for.  It seems to be agreed by all parties concerned that $45.24 is the correct rate on the car of coal in controversy from McAlester, I. T., to Oklahoma City, O. T., (Record, page 34).  The instruction asked for, and the refusal of which is complained of, was tantamount to asking the court to direct a verdict for the plaintiff in this case.  Now, if the clear, unmistakable, and undisputed evidence, and all the evidence in the case, shows the plaintiff's right to recover, then the instruction should have been given, but if on the other hand there is a dispute as to any material element or issue necessary for the plaintiff's recovery, or if the evidence on any material issue is such that fair-minded men might take a different view of the same, then the instruction was properly refused. It is conceded by counsel for both sides in their brief that three elements are necessary in order for the plaintiff to recover in this case.  First, that the car of coal in question was ordered by the defendant:  Second, that the plaintiff delivered the coal to the defendant at his usual place of business, and third, that the defendant accepted the car of coal. Now, while it is true that there are other elements and other issues raised in the case, such as the question of whether more cars were delivered than were ordered, and as to whether cars were not some times delivered by the coal company without orders and to avoid the payment of demurrage charges, but we take it that all those outside the material issues or

elements are not germaine to the real issues of this case. That the three foregoing and first stated issues are the issues upon which the plaintiff must recover if it recovers at all. This seems to be conceded by counsel for both sides. Now, as to the first issue, that is, did the defendant in this case order the car of coal in question. On pages 10 and 11, of the record, we find the evidence of William Bollinger, who was the agent of the William Busby Coal Company, and the person from whom the car in question was ordered. He testified that the car in question, to-wit: Car No. 21517, was ordered by Mr. Garrison, the defendant, the witness at that time producing a copy of the invoice to show this fact; and we have searched the entire evidence in the case, and find no where in that evidence that Mr. Garrison for himself, or any one for him, or on his behalf has ever entered any express and positive denial to that statement, unless it might be his attorneys in their brief. We find by an examination of the record that on page 41 it appears that Mr. Garrison was called as a witness in his own behalf and interrogated as to his acquaintance, business and dealings with William Busby, and the Busby Coal Company, but nowhere in his examination is he asked the question as to whether he ordered this particular car or not and nowhere in his testimony does he make any denial of the fact as testified to by the witness, Bollinger. Therefore, we take it that when he has been on the stand and failed to deny a statement made positively by a witness for the plaintiff, and where the record fails to show any denial of the fast, that it must stand in the record as undisputed, that the defendant did order this particular car of coal in the manner detailed by the witness, Bollinger.

Now, as to the second proposition, did the plaintiff deliver the car of coal in question, there seems to be no dispute. In fact, counsel for defendant in error admit in their brief, on page 2, that five cars of coal were delivered to the defendant when he had, as they say, ordered but two. But even conceding this to be the fact, it in no way, in our judgment, tends to dispute the express and positive testimony that he ordered this particular car, to-wit: car No. 21517. Defendant in error does not dispute that they delivered this car in question, together with four other cars, three of which he denies having ordered. But he claims he never received these cars. That brings us to the only remaining issue necessary to be determined in deciding this case. In the record, on page 44, is the testimony of E. J. Davis, who was an employe of the defendant Garrison, and the person who had charge of the receiving and unloading the cars of coal shipped to Garrison's place of business. He was called as a witness by the defendant and on that page, he states as follows:

"Q. Do you remember the fore part of March, receiving a car No. 21517, of coal?
"A. Yes, sir.
"Q. On the side track there?
"A. Yes, sir.
"Q. Does your book show it there—this book here?
"A. This book here shows it, this first book—the first I spoke of."

We think the testimony of Davis as to the arrangement between him and Bollinger, the sales agent of the Busby Coal Company, as contained on page 46 of the record shows that

he clearly understood at that time, that this car of coal had been received by him as the agent of defendant, Garrison. In that testimony, in answer to the question "What did you tell him?" he says:

"Well, I walked in, and Brother Bollinger was sitting down, and looked up in my face, and said 'What will you have?' And I told him that I was in trouble, and wanted him to help me out, and I says, 'I have five cars out on the track at the bins, and we haven't room but for three,' and I says, 'W. W. Green has agreed to take one car, and we haven't room for all the rest, and I want you to help me out with one of them.' 'Well,' he says, 'I think I can place one car for you all right,' and I says, 'Will you do that?' and he says, 'Yes, we will take care of one car,' and I says, 'Well, we can take care of three of them by hard scrouging.' Those are the words I used. And I thanked him for doing so, and went home rejoicing."

Now, from this testimony, it is apparent that Davis, who was the representative of the defendant fully understood that at that time he had received these cars, and that it was his duty to make some disposition of them. He says that they unloaded three of the cars, and in the record he gives the numbers of the cars. He also says they disposed of one car to W. W. Green. None of these numbers so given were the numbers of the particular car, the freight of which is in controversy. Hence, it is apparent that at that time he understood that he had that car on his hands and that is why he makes use of the expression, "I am in trouble and I want you to help me out." Now, it seems to us that this testimony clearly shows the fact that the car was delivered to the defendant, but it is contended that the defendant did not re-

ceive it with knowledge that he was expected to pay the freight.   We think the answer to this contention is found in the testimony of the defendant himself.   On page 42 of the record he testifies as follows:

"Q.   Well, do you mean by that that the freight then was paid by the party that took the cars?

"A.   Always; that is the custom on all shipments that I ever heard of; the man that receives the goods pays for the freight as well as the coal, or anything else."   And, on page 11, in the testimony of the witness, Bollinger, the question was asked:

"Q.   Under that contract, who was to pay the freight on that coal, Mr. Busby, or Mr. Garrison?

"A.   Mr. Garrison.

"Q.   Were the cars of coal furnished in pursuance of this order of Mr. Garrison, for the two cars of coal?

"A.   Yes, sir.

"Q.   Can you give the numbers of those cars?

"A.   I can give them off of the book here.

"Q.   State whether or not M. K. & T. 21517, was one of the cars of coal furnished in pursuance of Mr. Garrison's order?

"A.   It was."

No where in this entire record is this testimony in any way disputed.   Now, we think it must be apparent from this that there is no dispute that this car was received by the defendant, with full knowledge that he was to pay the freight. Now, we have examined the entire record, and we fail to find any where any dispute as to any one of these three propositions.   We think that the consolidation of this case with the other case of William Busby Coal Company against Garrison, and the testimony in that case must have confused the

jury and the court in the court below. The issues in that case are not before us, neither is the evidence in that case, and it is not necessary for us to pass upon the correctness or incorrectness of the verdict of the jury in that case. But it is apparent from the undisputed evidence in this case there was no defense set up or proven to the cause of action of the plaintiff. It certainly could not be held to be a defense that because this coal had been ordered by the defendant, had been delivered by the plaintiff, and had been accepted by the defendant, that by transferring his title to that coal to the Busby Coal Company, or by any arrangement between him and the Busby Coal Company, by which they were to take this coal off his hands, he could, in the absence of, and without the knowledge of the plaintiff, in any way effect the rights of the plaintiff. It seems to us, that conceding all that is claimed in this record by defendant in error, that is, that after this car of coal was delivered to him at his place of business, and as the record shows, was accepted by his agent, that he could enter into an agreement with the Busby Coal Company, by which they were to take this car off his hands, that such an arrangement as that could not constitute a defense against the cause of action of this plaintiff for the regular freight rate for which he became indebted to plaintiff on the delivery of the car of coal. It certainly could not bind the plaintiff, they not having been a party to the transaction, and as far as the record shows, had no knowledge of it.

We think the refusal of the court to direct a verdict under this situation was clearly error. For this reason the decision of the district court is reversed at the costs of the

defendant in error, and as there is no dispute as to the
amount, or correctness of the freight charges, it is ordered
that the cause be remanded with directions to the district
court to set aside the verdict of the jury and the judgment
of that court, and to render judgment in favor of the plain-
tiff and against the defendant in error, for $45.24, and in-
terest from March 6th, 1902, and costs, including costs of
appeal.

All Justices concurring.