IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2010 Session

# CHARLES ISHAM v. JAMES C. MARSHALL, ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 2009-CV-695      C. L. Rogers, Judge**

**No. M2009-02466-COA-R3-CV - Filed June 10, 2011**

The landlord and owner of a house filed a detainer warrant in general sessions court to regain possession of his house after notifying the tenants they should look for another place to live. In the warrant the landlord asked for possession, rents due, and reimbursement for any damages to the property. The general sessions court awarded the landlord possession only. The tenants filed a petition for writ of certiorari and supersedeas with the circuit court, claiming they had not received sufficient notice as required by statute and should therefore be permitted to remain in the house. The circuit court held a trial *de novo* on the issue of notice and granted the landlord a directed verdict on this issue. The tenants filed three motions asking the circuit court judge to recuse himself, and the judge denied them. The tenants appealed the court's award of possession to the landlord and the trial judge's refusal to recuse himself. Following the tenants' appeal, the landlord filed a post-trial motion seeking an award of back rent and reimbursement for damages the tenants had caused the house to suffer. Following a hearing, the trial court awarded the landlord $14,865 in back rent and damages. The tenants filed a second Notice of Appeal and argued their first Notice of Appeal divested the trial court of jurisdiction to hear the landlord's post-trial motion. We affirm the trial court in all respects. We first determine we do not have jurisdiction to rule on the issue of notice because the tenants have vacated the house and do not wish to return, rendering that issue moot. The trial judge did not abuse its discretion in refusing to recuse himself because the tenants' motions seeking his recusal were primarily based on the court's adverse rulings against them. Finally, we determine the trial court retained jurisdiction to hear the landlord's post-trial motions for back rent and damages because these issues were properly before the trial court and were unadjudicated issues when the tenants filed their first Notice of Appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

James C. Marshall, Sherry Marshall, Gallatin, Tennessee, Pro Se.

Gwynn K. Smith, Nathan Harsh, Gallatin, Tennessee, for the Appellee, Charles Isham.

## OPINION

This appeal started with a circuit court's judgment for possession in favor of the landlord, Charles Isham. The tenants, James and Sherry Marshall (the "Marshalls"), filed a writ of certiorari and supersedeas with the circuit court after the general sessions court in Sumner County granted Mr. Isham possession of the property at issue.

## I. BACKGROUND

This lawsuit has a convoluted procedural history, and the record on appeal is sparse at best. The parties do not dispute the following facts. The Marshalls began renting a house belonging to Mr. Isham starting in 1996. While the parties dispute whether the initial rental agreement was written or oral, they agree that after the first year the lease was based on an oral agreement.[1] Approximately twelve years later, Mr. Isham decided he wanted to remodel the house for his granddaughter and informed the Marshalls they should look for another place to live. Mr. Isham wrote a letter to the Marshalls dated March 25, 2009, in which he told the Marshalls to vacate the house by May 1, 2009. Mr. Isham sent the letter by certified mail, but after three delivery attempts the post office returned the letter to Mr. Isham "unclaimed."

Mr. Isham filed a Detainer Warrant in the general sessions court of Sumner County on April 22, 2009, in which he stated he gave notice to the Marshalls to vacate the house on March 25. The warrant was served on April 27, and a hearing was held on May 7, 2009. The general sessions court dismissed Mr. Isham's case because it found Mr. Isham had not waited a full 30 days after the letter was written to file his action.[2]

Mr. Isham filed a second Detainer Warrant in the general sessions court on May 13, 2009, in which he sought possession of the property, all unpaid rent owed as of the court date, and restitution damages to the property, if any. This warrant was served on the Marshalls on May 20, and the case was heard on June 4, 2009. The general sessions court

---

[1] The Marshalls contend the initial lease was written, but the record does not reflect any evidence of a written lease agreement. Mr. Isham asserts the lease agreement was always an oral agreement.

[2] Although the record does not indicate this is the reason Mr. Isham's Detainer Summons was dismissed, both Mr. Isham and the Marshalls agree this was the reason for the dismissal.

awarded Mr. Isham possession at this hearing.[3]

The Marshalls filed a Notice of Appeal from the June 4 judgment and then filed an Appellate Petition for Writs of Certiorari and Supersedeas with the Circuit Court on June 11, 2009. In the writ the Marshalls sought "review of and relief from the June 4, 2009 General Sessions Court Order" granting Mr. Isham possession of the house. The Marshalls alleged Mr. Isham did not give them the requisite 30-day notice to vacate the house as required by Tenn. Code Ann. §66-28-512 before filing his second Detainer Warrant on May 13.

Mr. Isham filed a motion to dismiss the Marshalls' petition because the bond the Marshalls had posted did not meet the statutory requirements to secure their rights to remain on the property. The court, apparently in reliance on Tenn. Code Ann. §29-18-129, ordered the Marshalls to post a bond in the amount of $14,000 to secure their rights to remain on the property pending resolution of the case.

The Marshalls posted the bond as ordered by the court and then filed a motion on August 24, 2009, to disqualify the circuit court judge. The Marshalls apparently wanted to engage in discovery prior to trial in an effort to prove they had paid a security deposit.[4] The court did not permit the Marshalls to obtain the discovery they sought, ruling the case was a simple breach of lease agreement on a rental house regarding rent and termination. The Marshalls contend the court did not comply with the law when it denied them the right to take discovery in the case.

The trial court entered an Order on August 25, 2009, in which it explained that it was not permitting the Marshalls to obtain the discovery they were seeking because the documents the Marshalls requested were irrelevant to the issue in the case, which was the sufficiency of Mr. Isham's notice to vacate the house. The court, however, did order Mr. Isham to respond to the Marshalls' "relevant discovery" as determined by the court. Turning to the Marshalls' motion for disqualification, the court denied their request, explaining that "the sitting Judge has no interest in this matter other than the administration of justice and can fairly decide and hear this matter on an impartial basis."[5]

---

[3] There was no outstanding rent due as of the court date, and Mr. Isham was not then aware of any restitution damages to which he was entitled.

[4] The record does not contain any purported discovery the Marshalls served on Mr. Isham, so we are left to determine from the parties' briefs and motions what the Marshalls were seeking to discover.

[5] The Marshalls filed a second motion to disqualify the circuit court judge the following day, on August 26, which motion the court also apparently denied. The record does not include any decision by the

(continued...)

The case was tried before a jury on September 1, 2009. Mr. Isham testified about the certified letter he sent the Marshalls dated March 25 asking them to move out by May 1, 2009, as well as about the detainer warrants that he filed in general sessions court. After Mr. Isham had presented his evidence, the court turned to the Marshalls for their presentation of evidence. Mr. Marshall told the court, "We have no witnesses to call, your Honor." The court responded, "I take it by your silence, there's no other proof to be offered."

Mr. Isham then moved the court for a directed verdict on the issue of possession. Mr. Marshall objected, arguing the jury should determine whether the notice Mr. Isham gave the Marshalls was sufficient under the law. The court granted Mr. Isham's motion, explaining:

> [T]he proof that I've heard presented to the jury, the parties do not dispute that the tenant, Mr. Marshall, was asked to move out March of '09. There was no denial that two notes were left in April of '09 and May of '09 to call the landlord, which Mr. Marshall did not do. There's no dispute that the certified letter went to Mr. Marshall, and it's stamped on the front by the post office "Unclaimed After Three Attempts," and the dates are listed on there. It goes without dispute that Mr. Marshall was served April the 27th, 2009 with a document that indicated without question that the landlord wanted the tenant out, and wanted possession of his premises. . . . [T]he defendant was again served on May 20, 2009, as I see these exhibits, again stating the landlord wanted his property and possession of his property back, and to vacate. And then again on June 4, 2009, an order to get out, an order of possession was entered for the landlord before the General Sessions Court.

> Now under our statutes, notice is defined as actual or given in writing. So the Court finds, number one, that actual notice to vacate has been numerous. There were actual notices and numerous attempts to give written notice and successfully served written notice where the tenant cannot deny that he had actual notice. That's my view of the evidence. All the evidence has been supported. . . .

> Taking this view in favor to Mr. Marshall and his wife, and giving all reasonable inferences to Mr. Marshall and his wife, and disregarding any countervailing evidence that may have been presented, the Court finds no other reasonable minds would decide that there was not sufficient notice to vacate.

[5](...continued)
trial court addressing this second motion.

-4-

The court thus entered an Order dated September 11, 2009, stating the Marshalls had received "sufficient actual notice as required by law to vacate the premises." The court accordingly ordered the Marshalls to remove their belongings and themselves from the property within fifteen days of the trial date of September 1.

The Marshalls filed a motion for a new trial as well as a post-trial motion for the trial court judge to recuse himself. The trial court denied these motions on November 16, 2009. The Marshalls appealed to this Court from that Order.

Following the Marshalls' appeal to this court, Mr. Isham filed two motions with the circuit court on January 15, 2010. In the first motion Mr. Isham sought rent from the Marshalls for the period June 5 through December 21, 2009, when the Marshalls finally vacated the house. Mr. Isham also sought reimbursement from the Marshalls for the clean up, repair, and yard work necessary after the Marshalls left the house and property. In his second motion, Mr. Isham asked for sanctions based on the Marshalls' frivolous and redundant abuse of the judicial process in violation of Tenn. R. Civ. P. 11.02. Mr. Isham asked the court to sanction the Marshalls by ordering them to pay his attorney's fees.

The court held a hearing on February 10, 2010, and based on the evidence presented and exhibits introduced, the court ordered the Marshalls to pay Mr. Isham the rent they owed for the period June 5 through December 21, 2009, in the amount of $5,025. The trial court ordered the Marshalls to pay Mr. Isham an additional $9,360 for the cost of repairs and removal of the Marshalls' debris from the property. The court denied Mr. Isham's motion for sanctions. The Marshalls filed a second Notice of Appeal on March 31, 2010, based on the court's Order to pay Mr. Isham $14,385 ($5,025 + $9,360) entered on March 1, 2010.[6]

## II. THE MARSHALLS' FIRST NOTICE OF APPEAL

On appeal the Marshalls allege they were in lawful possession of Mr. Isham's house on June 4, 2009, when the general sessions court awarded possession to Mr. Isham. The Marshalls point out they were current with their rental payments, and they contend the term of their lease was year to year rather than month to month, which they argue means that under the law Mr. Isham was required to provide them with six months notice before he could terminate the lease. The Marshalls also allege the circuit court judge was biased against them and should have recused himself.

---

[6]The Court of Appeals clerk treated the Marshalls' March 31, 2010, Notice of Appeal as a second Notice of Appeal in the existing appeal and did not open a new appeal or assign it a new appeal number. Therefore, the two appeals were effectively consolidated. This court ordered additional time for the parties to address issues related to the later-filed Notice.

### A. STANDARD OF REVIEW

A directed verdict is appropriate when the evidence presented is susceptible to but one conclusion. *Alexander v. Armentrout,* 24 S.W.3d 267, 271 (Tenn. 2000) *(citing Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn.1994) and *Long v. Mattingly*, 797 S.W.2d 889, 892 (Tenn.Ct.App.1990)).  The trial court may grant the motion only if it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Eaton*, 891 S.W.2d at 590.  In determining whether the trial court erred in granting a directed verdict, we must "take the strongest legitimate view of the evidence favoring the opponent of the motion." *Eaton*, 891 S.W.2d at 590.

We review a trial court's conclusions of law *de novo*, with no presumption of correctness.  *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

### B. MR. ISHAM'S NOTICE TO VACATE THE HOUSE

The Marshalls vacated Mr. Isham's property in December 2009, and they are not interested in returning to live in Mr. Isham's house.  The Marshalls would like a ruling on whether or not Mr. Isham's notice to them was sufficient even though such a ruling will not affect either the Marshalls' or Mr. Isham's rights to possession of the house.  However, the issue of notice is no longer justiciable because that issue has become moot.  Therefore, we do not have jurisdiction to consider whether or not the notice was legally sufficient.

We recently addressed the issue of mootness in *Alliance for Native American Indian Rights in Tennessee v. Nicely*, 182 S.W.3d 333 (Tenn. Ct. App. 2005).  We explained that before addressing an issue raised by one of the parties, we must first determine whether we have continuing jurisdiction over the issue.  We explained:

> The requirements for litigation to continue are essentially the same as the requirements for litigation to begin.  A case must remain justiciable through the entire course of litigation, including any appeal.  A case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights.

> A moot case is one that has lost justiciability because it no longer involves a present, ongoing controversy.  A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party.

*Id.* at 338 (citing *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n*, No. M1998-00985-COA-R3-CV, 2001 WL 72342, at *5 (Tenn. Ct. App. 2001), *State v. Ely*, 48 S.W.3d 710, 716 n.3 (Tenn. 2001); *Cashion v. Roberston*, 955 S.W.2d 60, 62-63 (Tenn. Ct. App. 1997), *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998), *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945), *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996), and *Knott v. Stewart County*, 207 S.W.2d 337, 338-39 (Tenn. 1948)).

If we were to address the question of whether the notice Mr. Isham gave the Marshalls to vacate his house was legally sufficient, our conclusion would not bring relief to either one of the parties because the Marshalls are no longer in the house and do not wish to return. That issue is therefore no longer justiciable, and we have no jurisdiction to address it.

### C. THE TRIAL COURT JUDGE'S REFUSAL TO RECUSE HIMSELF

The second issue the Marshalls raise in their first notice of appeal is whether or not the trial court judge should have recused himself. The Marshalls filed their first motion for recusal on August 24, 2009, after the court (1) declined to reschedule a pre-trial hearing and (2) denied the Marshalls the opportunity to discover facts concerning the issue of whether they had paid a security deposit. The court denied this motion in an Order dated August 25, 2009, in which the court wrote:

> Petitioners' oral motion in open Court on August 24, 2009, for [the trial judge] to recuse himself in this cause is without merit as the sitting Judge has no interest in this matter other than the administration of justice and can fairly decide and hear this matter on an impartial basis.

The Marshalls then filed a second motion for the trial court judge to recuse himself the next day, on August 26. The Marshalls' basis for the second motion was that the judge's "facial expression and body language, in addition to the manner in which he spoke to the Petitioner, James C. Marshall, conveyed to the parties, lawyers and all those in attendance in the courtroom, the appearance of judicial bias." The Marshalls contend the court denied this motion. Although the record does not contain an Order by the court addressing this motion, we assume it was denied since the judge continued to preside.

Following the trial of this case, the Marshalls filed a third motion for recusal. The basis for this motion was that the court did not provide the Marshalls an opportunity to testify on their own behalf at the trial. The trial court denied this motion on November 16.

The Marshalls represented themselves throughout the proceedings in this case, from the general sessions court all the way through the oral argument of this case on appeal. While parties who choose to represent themselves are entitled to fair and equal treatment, *pro se* litigants are not entitled to preferential treatment to the detriment of represented parties and are bound by the same substantive and procedural laws that represented parties must comply with. *Bowling v. Tennessee Bd. of Paroles*, No. M2001-00138-COA-R3-CV, 2002 WL 772695, at *4 n.6 (Tenn. Ct. App. 2002).

The question whether a trial court judge should recuse him or herself upon a party's motion is within the sound discretion of the trial judge. *Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009) (citing *Bd. of Professional Responsibility v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004)). We will not reverse the trial judge's decision "unless a clear abuse [of discretion] appears on the face of the record." *Bean*, 280 S.W.3d at 805 (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)); *State v. Connors*, 995 S.W.2d 146, 148 (Tenn. Crim. App. 1998) (Appeals Court may reverse trial judge's decision not to recuse him or herself only when the judge has clearly abused his or her discretionary authority). "Abuse of discretion" means the trial court has applied an incorrect legal standard or has reached an illogical or unreasonable decision that causes an injustice to the complaining party. *Bean*, 280 S.W.3d at 805.

The Marshalls' motions for the trial judge to recuse himself are primarily based on the court's rulings against them prior to the trial, at the conclusion of the trial, and in response to post-trial motions. The Supreme Court has explained that adverse rulings against a party do not provide sufficient grounds for a trial judge to recuse him or herself:

> [T]he mere fact that a judge has ruled adversely to a party or witness . . . is not grounds for recusal. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

*Davis*, 38 S.W.3d at 565 (citations omitted).

Tennessee Supreme Court Rule 10, Canon 3(E)(1) provides:

> A judge shall disqualify himself or herself in a proceeding in which

the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Other than the trial court's adverse rulings against them, the Marshalls present no other grounds to support their argument that the trial judge erred in failing to recuse himself. They do not show the judge had any personal bias or prejudice against them,[7] nor do they suggest the judge had any personal knowledge of disputed evidentiary facts in the case.

Based on the record on appeal, we have no basis to conclude the trial judge abused his discretion in refusing to disqualify himself in this case. We therefore affirm the trial court's denial of the Marshalls' motions for recusal.

### III. THE MARSHALLS' SECOND NOTICE OF APPEAL

The Marshalls filed their second Notice of Appeal following the trial court's March 1, 2010, Order on Mr. Isham's motion for back rent and reimbursement for the clean up, repair, and yard work he was required to perform after the Marshalls vacated the house. Mr. Isham filed this motion on January 15, 2010, four months after the trial court held a trial and entered its Order granting possession of the house to Mr. Isham. The Marshalls argue the trial court lacked jurisdiction to consider this post-trial motion by Mr. Isham because Mr. Isham did not present any evidence at the trial on the issue of back rent or reimbursement for damages, and the time had long passed for Mr. Isham to file a Rule 59.04 motion to alter or amend the judgment entered on September 11, 2009.

As discussed above, the Marshalls filed a writ for certiorari and supersedeas following the general sessions court judgment granting possession to Mr. Isham. The detainer warrant from the general sessions court therefore became the operative leading document in the circuit court, and this document, like a complaint in other proceedings, determines which

---

[7] Despite the Marshalls' argument that the trial judge did not provide them the opportunity to present their case at trial, the transcript shows otherwise. Once Mr. Isham rested his case, the judge turned to the Marshalls for them to present their case:

THE COURT: Mr. Marshall?
MR. MARSALL: We have no witnesses to call, your Honor.
THE COURT: All right. Anything else? All right. I take it by your silence, there's no other proof to be offered.

issues were properly before the circuit court.

In the detainer warrant filed on May 15, 2009, Mr. Isham asked for possession, all unpaid rent owed as of the court date, and restitution for damages to the property, if any. At the trial the circuit court held on September 1, Mr. Isham presented evidence on the issue of his right to possess the property at issue. He did not present evidence of, and the court did not rule upon, unpaid rent that was then due or restitution damages based on the Marshalls' alleged damages to the property.

In its Order dated September 11, the trial court specified that it was ruling on the issue of possession only. The court did not state or imply that the order was a final order addressing all issues that were raised or could have been raised by the parties. As of the date of the trial, the Marshalls were still living in Mr. Isham's house. Mr. Isham was not aware of the extent of his claim for damages until the Marshalls moved out towards the end of December, and he filed a motion asking for restitution for the same less than a month later. Moreover, until the Marshalls moved out of his house, Mr. Isham did not know, nor could he know, how much rent he should ask the court to award him. While he could have asked the court to award him the rent that was due and owing as of the time of the trial on September 1, Mr. Isham chose to wait and seek the full amount once the Marshalls vacated his property.

Prior to Mr. Isham's motion requesting back rent and restitution damages, the circuit court had not addressed these issues, and thus, Mr. Isham's right to these amounts remained unadjudicated. Therefore, under Rule 3(a) of the Tennessee Rules of Appellate Procedure, the November 16, 2009 Order,[8] which appeared to be a final judgment, was not in fact the final judgment and was not yet appealable as a matter of right. Tenn. R. App. P. 3(a). The Marshalls could have sought an Interlocutory Appeal pursuant to Tennessee Rule of Appellate Procedure 9 to contest the court's order granting possession to Mr. Isham even though the circuit court had not addressed all issues Mr. Isham raised in his detainer warrant. Without seeking permission to appeal this order, however, the Marshalls' first Notice of Appeal was premature because the circuit court had not resolved all issues between the parties when it was filed. *See Thompson v. Logan*, No. M2005-02379-COA-R3-CV, 2007 WL 2405130, at *11 (Tenn. Ct. App. 2007) (trial court had not addressed defendant's request for sanctions when plaintiff filed his notice of appeal, and Appeals Court therefore

---

[8]The circuit court entered an Order dated September 11, 2009, awarding possession to Mr. Isham. The Marshalls then filed a motion for a new trial on October 13 as well as a post-trial motion for the judge's recusal on November 12. The court held a hearing on November 13 to address each of these motions, which it denied on November 16. The November 16 Order denying these motions is the first Order the Marshalls appealed from.

determined notice of appeal was premature); *Wilkes v. Shaw Enterprises, LLC*, No. M2006-01014-COA-R3-CV, 2008 WL 695882, at *12 (Tenn. Ct. App. 2008) (plaintiff's notice of appeal was premature because chancery court had not yet addressed defendants' requests for attorneys' fees and costs).

The circuit court's November 16 Order was not a final judgment because it did not resolve all of the claims, rights and liabilities of the parties. The trial court therefore retained jurisdiction to rule on the unadjudicated claims. *Thompson*, 2007 WL 2405130, at *11. Consequently, the Marshalls' Notice of Appeal filed on November 23, 2009, was premature and did not divest the trial court of jurisdiction to resolve the remaining issues of back rent and restitution damages.

When a landlord seeks possession of his or her property in general sessions or circuit court, the court is directed to ascertain the arrearage of rent during the time the landlord has been kept out of possession, if the judgment is that the landlord recover possession, as well as any damages to which the landlord may be entitled. Tenn. Code Ann. §§29-18-124 and 29-18-131. These statutes have been interpreted to mean that a landlord who has been awarded possession must recover the rental payments that are due and owing in the lawsuit in which possession is awarded or the landlord is deemed to waive the right to collect these rents. If the landlord files another lawsuit at a later time to collect the rent that was in arrearage at the time he or she was awarded possession, the landlord is precluded from collecting this rent in the later lawsuit. In the second action the landlord is only entitled to the rent that accrues *subsequent* to the judgment for possession. *Nashland Associates v. Shumate*, 730 S.W.2d 332, 333 (Tenn. Ct. App. 1987); *Inmon v. Hadley*, No. E2005-00834-COA-R3-CV, 2006 WL 2507188, at *5-6 (Tenn. Ct. App. 2006).

We note that in the appellate brief the Marshalls filed pursuant to their second Notice of Appeal the Marshalls repeat their earlier argument that the trial judge should have recused himself. Having addressed their argument above, we will not do so again.

## IV. DAMAGES FOR FRIVOLOUS APPEAL

Finally, Mr. Isham has requested an award of damages pursuant to the statute providing damages for a frivolous appeal. Tenn. Code Ann. §27-1-122. The decision to award damages for the filing of a frivolous appeal, whether such damages are requested by a party or on the Court's own motion, rests solely in the discretion of this Court. *See Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn.1985).

"Successful litigants should not have to bear the expense and vexation of groundless appeals." *Whalum v. Marshall,* 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (quoting *Davis*

*v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn.1977)).  An appeal is frivolous when it has "no reasonable chance of success," *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999), or is "so utterly devoid of merit as to justify the imposition of a penalty," *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978).  We exercise our discretion sparingly in awarding damages under the statute so as not to discourage legitimate appeals. *Whalum*, 224 S.W.3d at 181; *Davis*, 546 S.W.2d at 586.

We decline to conclude the Marshalls' appeals were frivolous and, therefore, decline Mr. Isham's request for damages under Tenn. Code Ann. §27-1-122.

### V. CONCLUSION

The judgments of the trial court are affirmed.  Costs for this appeal shall be taxed to the Appellants James C. Marshall and Sherry Marshall, for which execution may issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE